BERNARD N. MARCANTEL, Judge Pro Tem.
The issues presented by this appeal are (1) whether the trial court erred in finding that plaintiff was entitled to recover both damages and worker’s compensation benefits as a result of an intentional act by her employer; and (2) whether the trial court erred in finding that plaintiff was disabled as a result of the alleged accident.
Plaintiff answers the appeal seeking an award for the medical expenses associated with her physical injuries and for penalties and attorney’s fees.
Shelia Gagnard (hereinafter plaintiff) filed suit for damages alleging that, on June 28, 1988, she sustained an injury when she was struck by her employer, Vincent Baldridge, d/b/a Popeye’s Famous Fried Chicken # 937F (hereinafter defendant). The petition for damages also requested benefits pursuant to the Louisiana Worker’s Compensation Act, which claim had been submitted to the Office of Worker’s Compensation and the Director’s recommendation was attached to the petition.
A bifurcated trial was held on April 11, 1990. The jury found on the damages claim that defendant was negligent and liable to plaintiff and awarded special damages of $16,381.88 and general damages of $7,177.50. On May 24, 1990, the trial court issued written reasons for judgment concerning the worker’s compensation benefits claim and held that plaintiff was entitled to worker’s compensation benefits for temporary total disability in the amount of $67.00 per week, or the minimum allowable rate provided by law from June 28, 1988, and were to continue through plaintiff's disability, together with legal interest. The trial judge rejected plaintiff’s demand for penalties and attorney’s fees. The judgment also provided for payment of certain medical expenses associated with plaintiff’s psychological injuries as well as future medical expenses. The trial judge further found that defendant’s liability insurer, State Farm Fire & Casualty Insurance Company, was not entitled to any credit on the jury verdict for any sums paid as worker’s compensation benefits. A formal written judgment was signed on July 31, 1990 and it is *1271 from this judgment that defendant suspen-sively appeals.
FACTS
On June 28, 1988, plaintiff was employed as a filler-bagger at defendant’s restaurant in Marksville, Louisiana. Plaintiff’s job was to fill the orders placed by customers using the drive-through window service. Plaintiff had worked for defendant for approximately four months. On the date of the alleged injury, plaintiff received an order for 20 chicken nuggets. Plaintiff filled the order and actually placed only 19 nuggets in the box because one nugget was a “doublenugget.” Testimony showed that defendant asked plaintiff about the number of nuggets she had placed in the order. When she replied the order only had 19, defendant hit or slapped her across the back before she could explain why the order only had 19.
Plaintiff testified that she cried in the bathroom for a while and then returned to complete her work shift. Plaintiff had difficulty sleeping that night and, the next day, she visited Dr. E.J. Kalifey, a family practitioner, to get a prescription for her nerves. Dr. Kalifey noted that plaintiff did not have any bruises or marks from the incident. He testified that she did not have any complaints of pain and her primary problem was that she was nervous and upset. He felt her situation was temporary and she would be able to return to work in a day or two.
Plaintiff then consulted an attorney, Edward Kaplan, about the incident and he referred her to a neurologist, Dr. Arsham Naalbandian. Plaintiff saw Dr. Naalbandi-an on two occasions in July 1988. She told Dr. Naalbandian of the incident and that she had been unable to return to work since the accident because she was having pain, headaches and neck pain. Dr. Naal-bandian performed a CT scan, EEG study, and cervical spine and skull x-rays on plaintiff; all the test results were normal. The doctor encouraged plaintiff to return to work and made an appointment to see her in two months. This appointment was not kept.
Plaintiff then began to see Dr. Bryan McCann, a family physician in Marksville, Louisiana, who prescribed medication and/or anti-inflammatory injections for muscle and ligament strain in the neck. After approximately 30 visits, Dr. McCann referred plaintiff to a counselor, Frank Ak-ridge, Jr. Later, he referred her to a psychiatrist, Dr. Hugh King.
Dr. King’s opinion was that plaintiff suffered from a post-traumatic stress syndrome with psychotic features. He directly related her condition to the incident of June 28, 1988, and stated she was disabled from employment.
LAW
Defendant contends that the trial court erred in finding that plaintiff was entitled to recover both damages in tort and worker’s compensation benefits as a result of an intentional act within the meaning of La. R.S. 23:1032. Defendant urges that recovery cannot fall in both areas of the law, but simply must be one or the other.
The purpose of the worker’s compensation act is a trade-off in which the employer protects the employee for any injury he sustains during the course and scope of his employment in exchange for the employer’s immunity against the harsh remedy of being susceptible to tort liability to the employee. This is the exclusive remedy provision as set forth in La.R.S. 23:1032. The exclusive remedy provision takes effect when an employee is injured during the course and scope of employment. Without the exclusive remedy provision, the law reverts to preworker’s compensation act in which the employer can be subjected to tort liability to his employee.
In the case at hand, the jury found that the defendant/employer did commit an intentional tort while plaintiff was working. In such a case, the law has allowed the plaintiff to recover in tort against his employer. La.R.S. 23:1032 B.
The trial judge’s well written reasons for judgment quotes language discussed in Bazley v. Tortivich, 397 So.2d *1272 475, at page 480 (La.1981), in which the legislative history of the statute is discussed and which stated:
“In abolishing the executive officer suit, however, the legislature provided that the exclusive nature of the compensation remedy does not apply to intentional acts. After considering broader penalties that would have provided double benefits for an employer’s violation of a safety rule, failure to provide a safety device required by law, or gross negligence on the part of a supervisory employee, which caused injury, death or disease, Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 20, our legislature chose to impose a sanction for intentional wrongs by making the exclusive remedy rule inapplicable to such acts. Because of the general practice of severely punishing intentional wrongdoers, which is widely accepted in the field of workers’ compensation, because of the received meaning and acceptance of the statutory language, and considering the object of the legislation, we conclude that the words ‘intentional act’ mean the same as ‘intentional tort’ in reference to civil liability.”
The trial judge notes that this language implies that “the intentional act exception to the exclusive remedy provision is a penalty. The legislature considered other penalties such as double worker’s compensation benefits but finally chose to penalize an employer for an intentional injury by making the exclusive remedy rule inapplicable to such acts. Thus, the penalty for injuries by intentional acts is that the employee can recover both damages in tort and worker’s compensation benefits.”
After reviewing the record and considering the applicable law, we affirm the trial court’s judgment on the issue of double recovery.
The next issue raised by defendant is whether or not the trial court erred in finding that plaintiff was disabled as a result of the alleged incident. Defendant admits that he slapped plaintiff on the shoulder, but he denies that she sustained any injuries as a result of the incident.
Plaintiff, on the other hand, answers the appeal and contends that the trial court erred in denying worker’s compensation medical benefits for her physical injuries.
The trial court found that, although there was no physical injury sufficient to cause disability, “plaintiff proved by a preponderance of the evidence that she is disabled by post-traumatic stress syndrome with psychotic features.”
We find that in the trial court’s reasons for judgment there was no clear error in the trial court granting only medical expenses for plaintiff’s psychological injuries. However, because medical expenses for plaintiff’s physical examinations were incurred in connection with her psychological injuries, we reverse the trial court on this issue and award plaintiff payment of the medical expenses as set forth below in connection with plaintiff’s injuries, together with future medical expenses as they accrue:
A. Dr. Brian McCann $2,135.00
B. St. Frances Cabrini Hospital 94.00
C. Marksville Clinic Pharmacy 5,194.86
D. Dr. Edmond Kalifey 10.00
E. Dr. Arsham Naalbandian 305.00
F. Rapides Regional Medical Center 454.00
G. Dr. Hugh King 655.00
H. People Plus Counselling Services 274.00
Total Medical Expenses $9,121.86
Plaintiff next contends that the trial court committed error in failing to find defendant arbitrary and capricious for its failure to pay worker’s compensation benefits.
The trial court answered this issue when it stated that the defendant had probable cause in failing to pay any benefits because of the serious dispute as to whether plaintiff suffered any disabling injury. We agree with the trial court and find this assignment of error is without merit.
For the reasons assigned, the judgment of the trial court is affirmed in part and reversed in part at the cost of defendants-appellants.
*1273 AMENDED AND AFFIRMED IN PART; REVERSED IN PART.