612 So.2d 732 (1993)
Shelia GAGNARD
v.
Vincent BALDRIDGE et al.
No. 92-C-1415.
Supreme Court of Louisiana.
January 19, 1993.
Rehearing Not Considered February 18, 1993.
*733 William Joseph Bennett, for applicant.
Kenneth Alfred Doggett, Rivers, Beck & Dalyrmple, for respondent.
MARCUS, Justice[*].
Shelia Gagnard filed this petition against her employer, Vincent Baldridge, d/b/a Popeye's Famous Fried Chicken # 937F (Baldridge) and State Farm Fire and Casualty Company (State Farm), Baldridge's liability insurer. The petition alleged that on June 28, 1988, while performing her duties as a "filler-bagger" at the drive-through window, she received an order for twenty chicken nuggets. Shelia placed only nineteen nuggets in the box because one nugget was extra large and she had been previously informed by her employer that a large nugget constituted two nuggets. When Baldridge discovered the event, he struck her on the upper back in front of other employees and customers. In addition to the tort claim, plaintiff sought benefits under the Louisiana Worker's Compensation Act as well as penalties and attorney fees for failure to pay benefits.[1] Baldridge excepted to plaintiff's petition on the ground that plaintiff could not request damages in tort in addition to her claim for worker's compensation benefits.[2] The matter proceeded to trial on April 11, 1990.
Plaintiff's claim for damages in tort was submitted to a jury. The jury rendered a verdict in favor of plaintiff and against Baldridge and State Farm in the amount of $16,381.88 in special damages and $7,177.50 in general damages. The worker's compensation claim was submitted to the court on the same evidence as that heard by the jury in the tort claim. The trial judge found that Baldridge committed an intentional act within the meaning of La.R.S. 23:1032(B). Moreover, the trial judge held that plaintiff was entitled to recover both damages in tort and worker's compensation benefits. Although plaintiff did not prove that she was physically disabled as a result of Baldridge's act, she did prove that his act caused "post traumatic stress syndrome with psychotic features," a psychological injury. The trial judge held that plaintiff was entitled to benefits for temporary total disability in the amount of $67.00 per week from June 28, 1988, to continue through her disability as well as past and future medical expenses relating to her psychological injuries only. Plaintiff's demand for penalties and attorney fees for failure to pay compensation benefits was rejected.[3] Last, State Farm was denied a credit on the jury verdict for any worker's compensation benefits that would be paid by Baldridge.
Baldridge appealed.[4] Plaintiff answered the appeal seeking recovery of additional medical expenses under the Worker's Compensation Act for treatment of her physical injuries as well as penalties and attorney fees for failure to pay benefits. The court of appeal affirmed the trial court in allowing recovery by plaintiff for damages for her tort claim and for worker's compensation *734 benefits. The court of appeal agreed with the trial judge that plaintiff was disabled as a result of her psychological injuries but not her physical injuries. However, because plaintiff's medical expenses for her physical examinations were incurred in connection with her psychological injuries, it awarded additional medical expenses of $6,257.13 for a total of $9,121.86 to cover the cost of those examinations plus future medical expenses. Last, the court of appeal found that Baldridge was not arbitrary and capricious for failure to pay worker's compensation benefits. On Baldridge's application, we granted certiorari to review the correctness of that decision.[5]
The issues presented for our review are (1) whether plaintiff was disabled as a result of the intentional act committed by her employer and (2) whether plaintiff was entitled to recover both damages in tort and worker's compensation benefits for her injuries resulting from the intentional act by her employer.[6]

PLAINTIFF'S DISABILITY
Shelia testified that the "blow" by Baldridge was between her shoulder blades and left red finger marks on her back. After Baldridge struck plaintiff, she went into the bathroom and cried and then returned to complete her shift. She could not sleep that night. The next day she was too upset to return to work so she went to see Dr. Kalifey, a general practitioner. He found no symptoms of physical injury but did prescribe a relaxant. She then saw Dr. Naalbandian, a neurologist, on two occasions in July of 1988. She complained of headaches and cervical pain from the blow on her back. Dr. Naalbandian performed several tests. He found that her symptoms were mostly muscular and would improve with time. He did not prescribe medication and was of the opinion that she was physically able to return to work. On August 10, 1988, Shelia was seen by Dr. McCann, a general practitioner. He diagnosed a muscle and ligament strain in the neck along with emotional trauma, anxiety and depression. Dr. McCann has been treating plaintiff on a regular basis (about thirty times at time of trial) and has prescribed pain medication for her physical injuries and antidepressant medication for her psychological injuries. His prognosis regarding her physical complaints was good and he believed she should recover in three to six months from date of trial. Dr. McCann referred Shelia to Frank Akridge, a family counselor, for her emotional problems. She saw Akridge six times and he diagnosed her as suffering from "adjustment reaction" which includes the symptoms of insomnia, nightmares, difficulty carrying on normal relationships and an obsession about the incident that precipitated the symptoms. Finally, in August of 1988, Shelia began seeing Dr. King, a psychiatrist. He diagnosed post-traumatic stress syndrome, a disorder that occurs after a very significant stress in a person's life. He has prescribed antidepressants, tranquilizers and group therapy. It is his opinion that plaintiff's psychotic disorder was caused by the incident on June 29, 1988, and that plaintiff has been unable and is presently unable to return to work. However, with continued treatment, he concluded that she should recover within a year from date of trial. Shelia testified that she continues to suffer from sleeplessness and crying spells. She no longer likes to be around people very much. She weighed 112 pounds at the time of the incident and lost about twenty five pounds. Her husband's testimony corroborated that of Shelia. Defendants introduced no expert testimony to contradict the opinions of plaintiff's medical experts.
Our law is well settled that findings of fact by the trial judge shall not be disturbed on appeal absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). We find no manifest error in the finding by the trial judge that *735 the psychological trauma of Baldridge's act resulted in post-traumatic stress syndrome, a disabling injury. The medical evidence supports this finding. Accordingly, the courts below correctly found that plaintiff was entitled to temporary total disability benefits as a result of the intentional act of her employer.

RECOVERY IN WORKER'S COMPENSATION AND TORT
La.R.S. 23:1031(A) provides in pertinent part:
If an employee ... receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
La.R.S. 23:1032 provides in pertinent part:
A. (1)(a) The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, ... against his employer, ... for said injury, or compensable sickness or disease.
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
Baldridge contends that the courts below erred in allowing plaintiff recovery of both damages in tort and worker's compensation benefits. He argues that if an employee pursues an action in tort for the employer's intentional act under La.R.S. 23:1032(B), he or she is not entitled to pursue benefits under the Worker's Compensation Act. We disagree.
The principle underlying the Worker's Compensation Act is a compromise in which the employer surrenders the immunity against liability which he would otherwise enjoy in all cases in which he was without fault, and, in return, the employee loses his right to full damages for his injury and accepts instead compensation measured as a percentage of his wages. Malone & Johnson, 14 La. Civil Law Treatise: Workers' Compensation, § 361 at pp. 132-33 (1980). The benefits under the compensation act include both medical expenses (La.R.S. 23:1203) and disability benefits (La.R.S. 23:1221). Disability benefits provide generally for payment of sixty-six and two-thirds per cent of wages during the period of disability. La.R.S. 23:1221.
In 1976, the legislature amended Section 1032 of the Worker's Compensation Act to make the exclusive nature of the compensation remedy inapplicable to intentional acts.[7] In Bazley v. Tortorich, 397 So.2d 475 (La.1981), this court discussed the legislative intent for adding what is now La.R.S. 23:1032(B):
After considering broader penalties that would have provided double benefits for an employer's violation of a safety rule, failure to provide a safety device required by law, or gross negligence on the part of a supervisory employee, which caused injury, death or disease, Official Journal of the House of Representatives, June 4, 1976, H.B. 354, p. 20, our legislature chose to impose a sanction for intentional wrongs by making the exclusive remedy rule inapplicable to such acts.
Id. at 480.
While some states have opted for built-in increases in compensation benefits when an employer commits an intentional act, our legislature opted to provide the injured employee with an opportunity to pursue an action in tort.[8] We think the intent of the *736 legislature in making the exclusive remedy rule inapplicable to intentional acts was to impose a sanction upon an employer for the commission of an intentional wrong such as the battery in this case. However, we do not think that an employee injured by his employer's intentional tort must forego the guaranteed benefits afforded under the compensation act in order to risk the possibility that he will prevail in an action in tort against his employer. The legislative intent was obviously to increase the potential recovery available to the employee, not to limit it. Thus, we think the purpose of excepting from the exclusivity provision of the compensation act injuries caused by the intentional conduct of an employer was to provide an employee the right to pursue an action in tort while at the same time allowing recovery of compensation benefits.
This approach is not intended, however, to allow an employee to be compensated doubly for the same elements of his damages. A wrongdoer should not be required to pay twice for the same elements of damages. Double recovery would be in the nature of exemplary or punitive damages which are not allowable under Louisiana law unless expressly provided for by statute. International Harvester Credit v. Seale, 518 So.2d 1039 (La.1988).
The employer in his capacity as tortfeasor owes his employee damages. He also owes his employee benefits under the Worker's Compensation Act. Benefits under the compensation act include disability benefits and medical expenses. In Brooks v. Chicola, 514 So.2d 7 (La.1987), in discussing the elements of loss for which compensation benefits are paid, this court determined that weekly benefits are intended to replace lost wages and to compensate for the lost capacity to earn wages, but not to compensate for pain and suffering. In contrast, in an action in tort, recoverable damages can include those same elements recoverable under the compensation act (past and future lost wages and medical expenses) as well as pain and suffering.[9]
We must now decide who should receive a credit or set-off for those items (past and future wages and medical expenses) that are the same under both obligations in order to avoid double recovery. Of course, if the employer is uninsured, it is of no moment. It is only significant when he has insurance in either one or both capacities. We find it more appropriate to give a credit or set-off to him in his capacity as a tortfeasor. We reach this conclusion because compensation benefits are paid in lieu of wages and are statutorily mandated regardless of the fault of the employer. Therefore, the employer in his capacity as tortfeasor should get a credit or set-off to wages (past and future) and medical expenses (past and future) to the extent that disability benefits and medical expenses have been paid or are to be paid under the Worker's Compensation Act but in no event more than the amount of wages and medical expenses owed or awarded under tort liability.[10] This will insure that the employee will get the maximum recovery for each element of damages and at the same time not allow double recovery.
*737 In the instant case, in the tort claim, the jury award was set forth accordingly:

Special damages (medical bills, etc.) $16,381.88
General damages (pain, suffering and
disability, physical and mental, past
and future) $ 7,177.50

On the worker's compensation claim, the trial judge found plaintiff to be temporarily and totally disabled and awarded her compensation benefits at the rate of $67.00 per week from June 28, 1988, and to continue through her disability. The trial judge awarded medical expenses of $2,864.73. The court of appeal affirmed the award of disability benefits; however, it increased the award of medical expenses to $9,121.86. No compensation benefits have been paid to plaintiff.
Our review of the record supports the conclusion that the $16,381.88 jury award for special damages includes both medical expenses and loss of wages. The award, however, does not specify the amount of damages awarded for each element. In regard to the award of worker's compensation benefits, the court of appeal concluded that plaintiff was entitled to $9,121.86 in medical expenses. We find that the record fully supports this award. Therefore, it is reasonable to conclude that $9,121.86 of the jury award for special damages was awarded for medical expenses. The remaining $7,260.02 is an award for loss of wages. While ordinarily, State Farm as the liability insurer of Baldridge, would be entitled to a credit or set-off of $16,381.88 (medical expenses and loss of wages), State Farm paid the judgment rendered against it and did not appeal. That judgment is now final and any claim for a credit or set-off is moot. In order to avoid double recovery by plaintiff of any of the elements of damages awarded, the judgment in favor of plaintiff on the worker's compensation claim should be subject to a credit of $9,121.86 for medical expenses and $7,260.02 in disability benefits.

CONCLUSION
In sum, we conclude that plaintiff is entitled to temporary total disability benefits as a result of the intentional act of her employer. We further conclude that although plaintiff is entitled to both damages in tort and compensation benefits under the Worker's Compensation Act, she may not recover doubly for any elements of her damages. The employer in his capacity as tortfeasor should get a credit or set-off to wages (past and future) and medical expenses (past and future) to the extent that disability benefits and medical expenses have been paid or are to be paid under the Worker's Compensation Act but in no event more than the amount of wages and medical expenses owed or awarded under tort liability. However, in this case, we cannot give a credit to the employer in his capacity as tortfeasor because the judgment in tort is final and any claim for a credit or set-off is moot. In order to prevent double recovery by plaintiff, we will allow a credit or set-off in the award under the Worker's Compensation Act. Therefore, the awards for disability benefits and medical expenses in favor of plaintiff in the worker's compensation judgment are subject to a credit of $9,121.86 for medical expenses and $7,260.02 in disability benefits.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it allowed double recovery; it is amended to allow a credit of $9,121.86 for medical expenses and $7,260.02 for disability benefits. Otherwise, the judgment is affirmed.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
An employee injured by accident arising out of and in the course of his employment is entitled to worker's compensation benefits from his employer. La.Rev.Stat. 23:1031. Before the 1976 amendment to La.Rev.Stat. 23:1032, this was the employee's exclusive remedy against his employer based on the injury. The legislative tradeoff took the injured employee out of the tort system and placed him in the compensation system.
The 1976 amendment removed tort damages caused by an intentional act from the exclusivity provisions of Section 1032. The *738 Legislature apparently intended to punish the intentional act by removing the employer's tort immunity, giving the employee the option to recover tort damages instead of compensation benefits (if tort damages exceeded worker's compensation benefits). However, nowhere does the 1976 amendment purport to allow the employee recovery of both tort damages and worker's compensation benefits, which have long been regarded as mutually exclusive remedies.
Nevertheless, while an employee cannot ultimately recover both tort damages and worker's compensation benefits from his employer, he can seek both (alternatively) in the same action. La.Code Civ.Proc. art. 462. allows a party to cumulate mutually exclusive actions against the same defendant in the alternative. Thus, when an employer injures his employee by an intentional act, the employee can assert claims for both tort damages and compensation benefits in the same action, but cannot ultimately recover both. The majority errs by reasoning that unless recovery of both tort damages and compensation benefits is allowed, the employee must forego compensation benefits in order to risk the possibility of recovery of tort damages. That is simply not the nature of cumulating mutually exclusive actions in the alternative. It is only when the employee is successful in recovery of tort damages that he must forego the guaranteed worker's compensation benefits.
NOTES
[*] Judge Melvin A. Shortess of the Court of Appeal, First Circuit, sitting in place of Justice Cole.
[1] Vincent Baldridge was self-insured for purposes of worker's compensation.
[2] The record does not reveal that the trial judge acted on the exception prior to trial; however, in his written reasons for judgment, he decided the issue.
[3] Plaintiff previously submitted her claim for benefits to the Office of Worker's Compensation. The recommendation of the Office was that the claim for compensation was work related to the left shoulder only and no benefits were due since the injury did not result in excess of seven days of disability. It was recommended that plaintiff be reimbursed for medical expenses related to the left shoulder and travel expenses.
[4] 597 So.2d 1269 (La.App. 3d Cir.1992). State Farm did not appeal the judgment in tort rendered against it. In oral argument, the attorney for Baldridge informed the court that State Farm paid the tort judgment rendered against Baldridge and State Farm shortly after trial. That judgment is now final.
[5] 604 So.2d 956 (La.1992).
[6] Plaintiff did not apply for relief to this court. Therefore, the finding by the courts below that plaintiff is not entitled to penalties and attorney fees for Baldridge's failure to pay worker's compensation benefits is now final.
[7] 1976 La. Acts No. 147.
[8] See, e.g., Kentucky Rev.Stat. 342.165 (15% increase for employer's intentional failure to comply with statute or regulation, 15% decrease in compensation to employees for similar conduct); N.C.Gen.Stat. § 97-12 (10% increase for employer's willful failure to comply with statute or order of the Commission, 10% decrease for employee's willful failure to comply with regulation or order of the employer); Mass.Gen. Laws Ann. ch. 152 § 28 (100% increase for willful misconduct of the employer).
[9] In Brooks, the employer intervened in an employee's tort action against a third-party tortfeasor for reimbursement of compensation benefits paid to the employee. The court was called upon to interpret La.R.S. 23:1103 to decide whether the employer was entitled to recoup compensation benefits paid and to be paid from the employee's award for damages for any elements other than past and future loss of earnings. This court concluded that the employer's reimbursement for benefits paid to its employee was limited to the award for lost wages and medicals and no reimbursement was allowable from the pain and suffering award. While Brooks has been legislatively overruled (see 1989 La. Acts No. 454, eff. Jan. 1, 1990), we consider it appropriate for purposes of analogy in this case.
[10] For example, if wages were $1500 under tort liability and disability benefits were $1000 under worker's compensation, there would be a $1000 credit to the tort claim. If wages were $1000 under tort liability and disability benefits were $1000 under worker's compensation, there would be a credit of $1000 to the tort claim. However, if wages were $500 under tort liability and disability benefits were $1000 under worker's compensation, there would be a credit of only $500 to the tort claim.