JiCOOKS, Judge.
Plaintiff, Joshua Douglas Reeves, sustained an on the job accident when a sandblasting pot he was moving fell on him injuring his lower back and knee. Reeves was employed by Structural Preservation Systems (hereafter SPS). Reeves subsequently underwent several surgical interventions on his knee. Suit was filed on behalf of Reeves against SPS, its insurer (Argonaut Insurance Company), and a co-employee (Darryl Chapman) alleging that the accident was caused by intentional acts of SPS and Darryl Chapman.
Following trial, a jury rendered judgment finding SPS actions were intentional and caused Reeves’ injuries. The jury awarded him $125,000 for pain and suffering, $42,500 for lost wages and $5,000 for past and future medical expenses. The jury also found Darryl Chapman did not commit an intentional tort and he was dismissed from the lawsuit.
|2Reeves appealed the jury’s verdict, asserting it failed to award past medical expenses even though they were stipulated to by the parties. SPS and its insurer also filed an appeal contending the jury erred in finding it committed an intentional tort and in awarding excessive damages.
ANALYSIS
I. Intentional Tort
Generally, the workers’ compensation laws provide the only remedy employees may seek against their employers for work-related injuries. However, if an employer, through its agents, employees or servants, commits an intentional act against the employee, in the course and scope of the employment, the worker may recover in tort against the employer. La.R.S. 23:1032.
An injury is intentional, i.e., the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or knows that result is substantially certain to follow from his conduct, whatever his desire may be as to the result. Bazley v. Tortorich, 397 So.2d 475 (La.1981).
*60 In Bazley, after an exhaustive study of employers’ immunity and intentional tort, the court concluded:
The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did. Several courts of appeal have stated the two prongs of the definition in the conjunctive, thus requiring a plaintiff to prove, in order to recover, that the defendant desired the physical results of his act in every case. (Citations omitted). Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he l3is treated by the law as if he had in fact desired to produce the result. Restatement (Second) of Torts, s 8A, Comment; Prosser, supra, 8
Reeves specifically asserted SPS, through its agents, employees or servants, committed an intentional tort by failing to provide a tow lift to move the sandblasting pot that fell on him. SPS argues the record does not contain any evidence establishing any agent, servant, or employee of theirs intended or desired to cause injury to Reeves.
Joshua Reeves was working as a general laborer for SPS on the date of the accident. He was instructed by his foreman, Calvin Sylvester, to move a sandblasting pot. The pot was a metal container which weighed approximately 350 to 400 pounds empty. It was capable of holding up to 1,000 pounds of sand. This particular pot had warning stickers on it which read, “Do not move pot manually.” These warning stickers were required by OSHA. The proper way to move the pot, was to affix it to a pallet and move it with a forklift or heister. When the pot in question was first moved to the SPS job in Lake Charles it remained on a pallet. However, shortly thereafter, “upper management” decided this particular job did not need a forklift or heister, so the pot was removed from the pallet so it could be moved manually. Calvin Sylvester testified as follows:
Q: So when it got to Lake Charles, it was still on the pallet?
A: Right. It was in the truck; it was on the pallet.
Q: Why did the pallet have to come off after it got to Lake Charles?
|4A: ‘Cause we didn’t have no way of moving it around. It had to be moved manually if you had anything to do.
Q: Did you personally ever ask anybody for a method of moving that pot around other than moving it manually?
A: Yes.
Q: Who did you ask?
A: We, first we had — we had what they call a safety meeting.... And at that particular time, another foreman or supervisor was there; that was during when we first started the job, and I spoke about needing a tow motor to move that thing around and they said they’d look into it, but I never did get one. So one day while at the office, I spoke with the project manager—
Q: For SPS?
A: Right.
Q: What’s his name?
A: At the time — his name was Bill Luger — about a tow motor to move that pot around and he said he would look into it. But I never was given an answer as to whether we were going to get one or not. Generally, we would normally have all this on the job what we call de-mob and mobilize. When we mobilize, all this equipment normally comes in the same day or we don’t start no work without it. That’s been my experience with my previous employer; that’s the way we do business. We wouldn’t attempt to move things around like that manually.
Q: Did you ever get a tow motor or forklift to move that with?
A: No, not — the company didn’t rent one or lease nothing. What I had to do when I could, I had to beg, borrow and like steal one. When I say steal, I mean if one was sitting there and the key was in it, you know, I’d just—
Q: Go get it?
*61 A: —I’d just go get it. It’s not all of them; this is a special kind — all of them uses a key like this if its a heister, so I got my own key; I can just about get in one anywhere and drive it.
Q: SPS never got one and put it on the job?
A: Not on that job.
SPS argues “the mere fact [that it failed] to supply this equipment in and of itself does not, under the law, give rise to a showing that an intentional tort [was] |5committed.”
In Rosell v. ESCO, 549 So.2d 840, at page 844 (La.1989), the Louisiana Supreme Court enunciated the following general principles that govern an appellate court’s power to reverse a trial court’s factual finding:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
After a review of the record in its entirety, we conclude the jury was not clearly wrong when it found SPS personnel were aware injury was substantially certain to occur if the sandblasting pot was moved manually. The record reflects SPS supervisory personnel knew that the sandblasting pot could not be moved safely without a tow motor and moving it manually violated OSHA safety regulations, yet they failed to provide the appropriate equipment. The jurisprudence amply supports finding an employer liable for an intentional tort where it directs an employee to perform work which the employer knows is so dangerous injury is likely to result or its knows or should have known that the physical injury was substantially certain to follow from the employee’s act. In Wainwright v. Moreno’s Inc., 602 So.2d 734 (La.App. 3 Cir.1992), we held the employer’s act of ordering the employee back into a ditch when he had been warned that collapse of the ditch was imminent was an intentional act. Our brethren on the Fifth Circuit in Casto v. Fred’s Painting, Inc., 96-405 (La.App. 5 Cir. 1/15/97); 688 So.2d 72, also held an employer committed an intentional tort after finding it had knowledge shock and injury were imminent upon human | (¡contact with the metal surface of a refrigerator, yet it elected to place rubber tubing only on the handle, which did not alleviate the danger posed to workers who came in contact with the refrigerator.
II. General Damages
SPS contends the $125,000 awarded by the jury to Reeves for his pain and suffering was excessive. Reeves sustained injuries to his knee which required three surgical procedures followed by intensive physical therapy. Dr. Lynn Foret, who performed the surgeries, testified that Reeves has a ten to twenty percent permanent knee disability. Dr. For-et also testified the accident caused Reeves’ back problems at the L2 level. Dr. Foret felt Reeves will have future back problems, and did not feel that surgery would lessen his complaints,
In reviewing general damage awards, an appellate court must accord much deference to the trial judge or jury. Andrus v. State Farm Mutual Automobile Insurance Company, 95-0801 (La.3/22/96), 670 So.2d 1206, 1210. The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Andrus, 670 So.2d at 1210; Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Because the discretion vested in the trial court is great, and even vast, an appellate court should only disturb an award of general damages if there is a clear abuse of that discretion. Andrus; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). When reviewed under the foregoing standards, the general damage award of $125,000 to Reeves does not constitute a clear abuse of the jury’s discretion.
|7III. Compensation Credit
Louisiana Workers’ Compensation Corporation (LWCC) argues the trial court *62 erred in not allowing it a credit for future compensation payments to Joshua Reeves. The trial court rendered a supplemental judgment granting LWCC a credit for medical expenses paid and for past compensation payments. LWCC is entitled to reimbursement for expenses and benefits it paid to Reeves. See Lachney v. Motor Parts & Bearing Supply, 357 So.2d 1277 (La.App. 3 Cir.1978); Cosse v. Allen-Bradley Co., 612 So.2d 286 (La.App. 5 Cir.1992); Hall v. Hartford Accident & Indem. Co., 278 So.2d 795 (La.App. 4 Cir.), writ denied, 281 So.2d 753 (La.1973). Defendants contend they should also receive a credit for future compensation benefits to avoid allowing plaintiff double recovery. They cite Gagnard v. Baldridge, 612 So.2d 732 (La.1993) in support of this contention. However, the situation in Gagnard is different from that presented here. In Gagnard, the court was faced with the possibility of double recovery because the employer was also a tortfeasor and its general liability insurer failed to appeal. Struggling with this special circumstance and desiring not to afford the claimant double recovery, the supreme court granted the employer a credit for future compensation benefits against satisfaction of the liability judgment. Here, however, La.R.S. 23:1103 prevents double recovery against an employer whose obligation to pay the claimant is mandated solely by workers’ compensation law, as opposed to an obligation to pay that is grounded additionally in general tort law. La.R.S. 23:1103 allows the compensation carrier a credit for future compensation computed at 6% per annum, up to the amount of the tort judgment; and, it is not liable for payment until that judgment is used up. Therefore, since Isthe employer is entitled to a credit for future payments by operation of law, no judgment providing so is necessary. This assignment, thus, lacks merit.
IV. Medical Expenses
The jury awarded $5,000 medical expenses to Reeves. The verdict sheet given to the jury listed the following as an item of damages:
e. Medical expenses, past & future, if any
$-
In this space, the jury inserted $5,000 and underlined the word future. We are satisfied the jury’s award was strictly for future .medical expenses. Further, defendants stipulated that plaintiffs past medical expenses equaled $36,311.23. The trial court made the following statement in open court as to medical expenses:
Yesterday evening after we excused the jury, we worked out something that would save us a little bit of time. The parties agreed that the medical expenses which have been paid to date for Mr. Reeves are $36,311.23. And so that’s something that should be taken into consideration, and there will not be any testimony about those bills that will be produced because the parties have agreed, and that it will take some time out of the trial because they’ve agreed to that. But for your benefit, you need to know that the medical expenses of $36,311.23 was paid for his injuries.
At the conclusion of the evidence, the court instructed the jury as to the law and instructed if liability was found, it should consider awarding both past and future medical expenses to plaintiff. The verdict sheet provided the jury is consistent with that instruction. As noted, the jury did not enter an award for past medical expenses. We must assume, despite the court’s instructions, the jury nevertheless remained confused. Therefore, we will amend the judgment to add the past medical expenses stipulated to by the parties to the future medical expenses |9awarded by the jury for a total award of $41,311.23.
DECREE
For the foregoing reasons, we amend the jury’s award of medical expenses from $5,000.00 to $41,311.23. The judgment is affirmed in all other respects. All costs of this appeal are assessed against defendants.
AFFIRMED, AS AMENDED.