## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-641


MISTY LUNEAU NOLAND

VERSUS

RYAN MICHAEL NOLAND


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 232,274
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**********

## D. KENT SAVOIE
## JUDGE

**********

Court composed of John D. Saunders, Billy H. Ezell, and D. Kent Savoie, Judges.


**AFFIRMED.**

**Gregory N. Wampler**
**Lemoine & Wampler**
**607 Main St.**
**Pineville, LA 71360**
**(318) 473-4220**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Misty Luneau Noland**

**Michael H. Davis**
**Attorney at Law**
**2017 MacArthur Drive**
**Building 4, Suite "A"**
**Alexandria, LA  71301**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Misty Luneau Noland**

**Bradford H. Felder**
**G. Andrew Veazey**
**Huval, Veazey, Felder & Renegar, L.L.C.**
**2 Flagg Place**
**Lafayette, LA 70508**
**(337) 234-5350**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Ryan Michael Noland**

**SAVOIE, Judge.**

In this custody dispute, Ryan Noland appeals the trial court's judgment denying his motion for modification of custody. Misty Noland filed an answer to appeal in the trial court requesting certain restrictions placed on her in the judgment be removed.[1] For the reasons set forth herein, we affirm the judgment and decline to consider Misty Noland's Answer to Appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Ryan and Misty Noland were married on June 16, 2007. Of the marriage, two children were born – Conner on February 11, 2005, and Lillian on August 20, 2007. A Petition for Divorce, including a request for child custody and support, was filed on December 17, 2008. The petition designated Misty as the primary domiciliary custodian of the minor children with Ryan entitled to specific periods of custody.

On June 5, 2012, Misty filed a Rule for Modification of Child Support and Custody/Visitation and Contempt of Court that was tried on July 23, 2012. Written

---

[1] Misty Noland's Answer to Appeal was not properly filed, and we decline to consider it. Louisiana Code of Civil Procedure Article 2088(A) provides, in pertinent part:

> The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal. . . .

The record reflects that Ryan Noland fax filed a Petition for Appeal in the trial court on May 10, 2016. The trial granted the appeal on May 17, 2016. At that time, in accordance with La.Code Civ.P. art.2088, the trial court became divested of jurisdiction over all matters on appeal. Thereafter, Misty Noland filed her Answer to Appeal on July 17, 2016 in the trial court. As such, the Answer to Appeal was "improvidently filed in the wrong tribunal and, thus, will not be considered." *Sorile v. Lott Oil Co., Inc.*, 14-1156, p. 1 (La.App. 3 Cir. 3/4/15), 160 So.3d 178, 179 n.1; *See also, Smoot v. Hernandez*, 08-1121 (La.App. 3 Cir. 3/4/09, 6 So.3d 352; *Kelly v. Boise Bldg. Solutions*, 11-1116 (La.App. 3 Cir. 5/2/12), 92 So.3d 965, *writs denied*, 12-1173, 12-1209 (La. 10/8/12), 98 So.3d 851.

reasons and judgment were rendered on July 31, 2012. The trial court ordered a more specific visitation and custody schedule.

On July 15, 2015, Ryan, now remarried and living in Oklahoma, filed a Motion for Ex-Parte Custody and Modification of Custody, Visitation and Child Support. An ex-parte order granting custody of the children to Ryan was improperly signed which led to a sequence of events wherein Misty's mother, Dorothy Luneau, attempted to use the order to gain custody of the children. Misty then filed a Motion to Vacate the Ex-Parte Order which was granted on July 17, 2015 after a hearing on the matter. Ryan's original modification of custody was heard in December 2015 and February 2016 and culminated with days of testimony from twenty-seven witnesses and sixty-five exhibits. The trial court issued written reasons dated March 24, 2016, and judgment was signed May 2, 2016. The judgment denied Ryan's motion for modification of custody and ordered the following actions be taken by the parties:

(1) Misty is to submit to random drug screens at Louisiana Occupational Health Services, 3018 Jackson Street, Ste. 100, Alexandria, Louisiana, as follows:

    a) Random and observed urine screens twice weekly for six (6) months from the date of this judgment, and then once weekly for the following six (6) months;

    b) A hair follicle test once monthly for twelve (12) months from the date of this judgment; and

    c) Misty is to execute a medical release form with Louisiana Occupational Health Services, 3018 Jackson Street, Ste. 100, Alexandria, Louisiana, authorizing all test results to be mailed to Thomas M. Yeager, District Judge, P.O. Box 1431, Alexandria, Louisiana 71309, or delivered to Judge Yeager by facsimile at 318.484.2704.

(2) Misty to undergo substance abuse and family counseling with Lydia Roy, 3921 Independence Boulevard, Ste. 101,

Alexandria, Louisiana 71309 (Telephone: 318.528.8717), with the frequency and length of that counseling to be determined by Ms. Roy. Misty is to execute a medical release form with Ms. Roy, authorizing and directing Ms. Roy to provide a progress report every ninety (90) days, to be mailed to Thomas M. Yeager, District Judge, P.O. Box 1431, Alexandria, Louisiana, 71309, or delivered to Judge Yeager by facsimile at 318.484.2704.

(3) Misty is to continue treatment by Dr. Edwin Urbi, MD, 5920 Coliseum Boulevard, Alexandria, Louisiana, and to take all medications prescribed by Dr. Urbi.

(4) Misty is prohibited from consuming alcohol and from entering bars, lounges, and casinos and is not to consume any controlled dangerous substances (CDS) unless prescribed by a physician; however, prior to any such prescription being written, Misty is to notify the physician of her substance abuse addiction and request that the physician prescribed a non controlled substance, if possible.

(5) The minor children, Conner Michael Noland, born February 11, 2005, and Lillian Ryan Noland, born on August 20, 2007 (sometimes jointly hereafter "the children") are to have reasonable access to communicate with Ryan and that communication will not be censored nor monitored in any manner. Ryan is to have contact with the children by telephone, Skype, or Facetime at least four times a week, with Misty having the responsibility for placing the calls.

(6) Misty is not permitted to make or allow to be made, in the children's presence, any derogatory comments, directly or indirectly about Ryan, Lindsey Noland, or her mother, Dorothy Luneau.

(7) Misty is, with the assistance of her substance abuse and family counselor, to work on a plan to reestablish a relationship with her children and their grandparents.

(8) Misty is to have both children evaluated for ADHD and to follow any treatment recommendations or medication recommendations made by the evaluator.

(9) Both Misty and Ryan are to purchase services provided by Our Family Wizard at www.OurFamilyWizard.com or by calling 1.866.755.9991.

The trial court reserved its ruling on the issue of child support and all other motions filed by the parties. It is from this judgment that Ryan appeals.

3

## ASSIGNMENTS OF ERROR

1. The trial court erred when it applied the *Bergeron* standard rather than the *Evans* standard for modification of custody.

2. Regardless of whether the *Bergeron* or *Evans* standard applies, Ryan met the standard justifying a modification of custody, and the trial court erred when it failed to properly apply the Civil Code Article 134 factors and to name Ryan domiciliary parent and award Misty custodial periods appropriate for someone living approximately eight hours away from the primary custodian.

3. The trial court erred in considering the evidence of Lilly's educational improvement during the course of the litigation as paramount in its determination of custody. At the time Ryan filed his initial request for modification of custody on July 15, 2012, Lilly had failed the first grade and was repeating that grade after having repeated pre-kindergarten. Only after Ryan sought modification of custody, while Misty was under microscope, did Lilly allegedly improve with her school work. In other words, the trial court erred both in considering post-filing facts influenced by the ongoing litigation (and the involvement of Misty's father) and in its putting undue weight on only one of the twelve factors.

4. The trial court erred in holding that Ryan failed to meet his burden to modify the July 31, 2012 Judgment, but then modifying that judgment in an effort to reform Misty and protect the children from her with continued involvement and oversight of the trial court. In other words, the provisions that the trial court included in the judgment to reform Misty establish that Ryan did, in fact, meet his burden even if the *Bergeron* standard applies. Therefore, the trial court erred in establishing itself as a "safety monitor" for the children rather than placing the children with Ryan with whom there were no concerns for their safety.

5. Alternatively, the trial court erred when it failed to amend Ryan's custodial periods given that Ryan now lives eight hours away from Misty.

6. The trial court erred in sustaining Misty's objection to the introduction of a Facebook posting between she and her friend, Chad Hill.

7. The trial court erred when it sustained Misty's objection to the introduction of factual evidence not specifically pled in Ryan's pleadings.

8. The trial court erred when it cast each party with their own costs.

**STANDARD OF REVIEW**

"[A] trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion." *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365.

In a child custody proceeding, the trial court must consider all factors relevant to the child's best interest. La.Civ.Code art. 134. Further,

> [t]he court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court.

*Thibodeaux v. O'Quain*, 09-1266, p. 5 (La.App. 3 Cir. 3/24/10), 33 So.3d 1008, 1013 (quoting *Cooper v. Cooper*, 43,244 (La.App. 2 Cir. 3/12/08), 978 So.2d 1156).

**DISCUSSION**

*I.     Assignment of Error Number One – Bergeron v. Evans Standard of Review*

The trial court found that the July 23, 2012 hearing on Misty's Rule for Modification of Child Support and Custody/Visitation, which resulted in a July 31, 2012 judgment, is a considered decree. "A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court. By contrast, a judgment with a custody plan that was entered by default, was not contested or was merely entered by the consent of the parties, is not a considered

decree." *Evans v. Terrell*, 27,615, p. 4 (La.App. 2 Cir. 12/6/95), 665 So.2d 648, 650, *writ denied*, 96-387 (La. 5/3/96), 672 So.2d 695.

After the 2012 hearing, the matter was taken under advisement and written reasons were assigned on July 31, 2012. That opinion states:

> Based upon the tone and demeanor of the parties along with a consideration of the factors as set forth in Louisiana Civil Cod art. 134, though not a tremendous amount of evidence concerning the specific relationship of the parents to the children were introduced at trial, the Court finds that it is in the best interest of the children that Misty Noland be designated the primary domiciliary custodian of the minor children and that Ryan Noland receive visitation as set forth below pursuant to an order of joint custody.

On the issue of burden of proof on the present motion, the trial court opined in the March 24, 2016 Written Reasons:

> Pursuant to La. C.E. art 201, the Court takes judicial notice of the official minutes that show seven exhibits were introduced (all dealing with the child support/contempt for failing to pay medical bills, etc.) and that both Ryan Noland and Misty Noland were called and testimony adduced.
>
> Therefore, based upon the Written Reasons for Judgment and the official minutes of the Court, the Court finds the previous hearing is a considered decree and therefore, the petitioner, Ryan Noland, has to satisfy the burden of Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La. 1986), that is a "change of circumstances has occurred such that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree or that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child."

Because it found the judgment to be a considered decree, the trial court applied the *Bergeron* standard when analyzing the motion to modify custody on appeal. Ryan's position is that custody was not at issue in the 2012 hearing, only a change to the visitation schedule. We disagree. There is little doubt that the 2012 judgment is a considered decree. The trial court clearly weighed the best interest of the children and kept the designation of primary domiciliary custodian with

6

Misty while making changes to Ryan's visitation schedule pursuant to an order of joint custody. We find no error in the trial court's application of the *Bergeron* standard to this matter. This assignment is without merit.

II.    *Assignments of Error Numbers Two and Four - Burden of Proof and Custody Order*

Because we found that the 2012 judgment is a considered decree, the *Bergeron* standard applies to the present appeal. The supreme court in *ABE v. JBE*, 99-2668, p. 7 (La. 11/30/99), 752 So.2d 756, 761 explained:

> In such actions, the proponent of change must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody. *Bergeron*[*v. Clark, 02-493 (La.Spp. 3 Cir. 10/16/02)], 492 So.2d at 1195*. The party seeking a change "bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." *Bergeron, 492 So.2d at 1200*. This burden of proof is imposed as a means of implementing the best interest standard in light of the special considerations present in change of custody cases. Last, the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of a clear showing of abuse. *Bergeron, 492 So.2d at 1196*.

The findings of the court in this matter are extensive and detail the reasons the trial court ruled in Misty's favor. The trial court was not kind to Misty and stated that it had never heard testimony "as damaging as the evidence against Misty Noland." The trial court found that Misty had been diagnosed with bi-polar disorder, depression, obsessive compulsive disorder and anxiety, and she did not take her medication as prescribed. Misty also has an addiction to opiates such oxycontin, hydrocodone and amphetamines for which she has been in outpatient treatment three times. She was using cocaine and heroin as recently as May 2015. The court further found that she constantly interferes with the children's access to

7

their father, his mother, and her own mother. While in her custody, Conner has had to have extensive dental work. Misty suffers from migraine headaches once a week which incapacitate her. On numerous occasions, Misty has referred to Ryan's new wife, Lindsey, as a "bitch," and she engages in inappropriate behavior when Lindsey is around. The court found that Misty is "manipulative, controlling, impulsive, narcissistic and has created a chaotic atmosphere for the children" with the conflict she creates. Conner, at the age of eleven, felt responsible for his mother and even had to wake her up in the mornings. According to Misty's mother, Misty does not cook for the children and provides them with junk food. Conner cooks breakfast, and the home is not clean. Misty is in bed ninety percent of the time, and Lillie had to repeat kindergarten and first grade.

The trial court found that Misty's behavior is "typical narcissistic behavior of a drug addict;" however, it was provided with "satisfactory evidence to explain the dental issue and Lille repeating two grades." The court further found that, contrary to how her mother testified, Misty is not in bed most of the time. The children play outside and have friends in the neighborhood. Based on the testimony of Anna Theus (director of St. James Day School), Candi Frost (Conner's former teacher), Nancy Rials (principal of Alexandria Country Day School), Helen Cespiva (teacher at Alexandria Country Day School), Nathan February (Lillie's dance teacher), Katie Long, Laura Cooper (Lillie's tutor), and Christine Tilley (the children's counselor), Misty is very active with the children, in their school, and in their activities. Further, none of these witnesses ever saw any behavior from Misty which would indicate that she had a drug problem.

Misty has enlisted the aid of Christine Tilley, beginning in May 2014, to help her children cope with the effects of the divorce. Ms. Tilley's found Lillie to

be "head strong," and she also found that Conner had problems with anger which derives from his father's move to Oklahoma.

Anna Theus described Misty as the "primary parent" of the children. Misty served on the Board of Directors, assisted with the auction, lobster boil and donated funds to the school. Ms. Theus found Misty to be a wonderful parent and had no cause for concern.

Candi Frost also described Misty as very involved. Ms. Frost testified that Conner was well groomed and never unkempt.

Nancy Rials described the children as happy, normal, and well-groomed. She stated that there were no disciplinary problems. She also described Misty as very involved. Helen Cespiva reiterated Misty's involvement.

The trial court also found unfavorable testimony regarding the children's father, Ryan. He was consistently late paying child support. He was not involved with the children's schooling and did not worry about their progress until Lillie was held over. He never contacted Christine Tilley, the children's counselor, to inquire about the sessions or if he could help in any way. He failed to exercise his custody on several occasions.

The trial court was not impressed with how Ryan handled his move to Oklahoma. He did not discuss this move with the children until very shortly before he left. The court found that he could and should have done more to help the children before and after he left.

Further, when Ryan had custody of the children in the summer of 2014, he ignored Laura Cooper's request that he tutor Lillie. Ms. Cooper and Misty sent tutoring materials and instructions with Lillie. Ms. Cooper tried to call him, but

her calls went unanswered. When Lillie returned from her summer visit, there was only one week left to get her ready for school.

It was also the trial court's opinion that the person primarily responsible for the filing of the Motion to Modify Custody was not Ryan but rather Misty's mother, Dorothy. The trial court stated that "[w]ithout her involvement and her hiring an attorney to represent Ryan, the Court doubts the motion would have been filed."

The trial court was most concerned with Lillie's welfare and learning disorders. The trial court noted that "[a]lthough I would never give Misty Noland a trophy for 'Mother of the Year,' she certainly deserves credit and a pat on the back for what she has done, (with the assistance of her father), for Lillie." The trial court went on to describe Lillie's condition:

> Lillie has been diagnosed with Oppositional Defiant Disorder, Attention Hyperactivity disorder and Dyslexia, and because of such, she has learning disorders. She has repeated kindergarten and the first grade and is in her second year of first grade at this time.

> Helen Cespiva taught her the last two years in first grade. Once she realized the struggle Lillie was having, Lillie was tested and was given an Individual Education Plan (IEP) to specifically meet her educational needs. [Misty] was present at the meetings concerning Lillie's problems and was "concerned, cooperative and wanted to help." They arranged for the Rapides Parish School Board to provide a tutor for her during school hours.

> Ms. Cespiva has been Lillie's first grade teacher for the last two years and is in the best position to compare Lillie's progress last year and this year, or lack thereof.

> She testified that last year, Lillie was embarrassed, more aggressive and agitated. Because of all the hard work by Lillie, Misty, Ms. Cespiva and Ms. Cooper this year, Lillie has blossomed and her self-confidence, self-esteem, interacts better with classmates, is a class leader in group activities, is easier to work with and will be a good second grade student.

10

She testified that a learning disability has nothing to do with intelligence but a problem with how the brain processes information. If it does not process information correctly, then the disability has to be "remediated" by a qualified educator by use of certain techniques. If done correctly, (which the Court finds Ms.Cooper/Cespiva are doing), Lillie will outgrow her disability.

Misty also hired Laura Cooper as a tutor who has taught children for 40 years, has four teaching certifications and has been a tutor since 1976. She is not only a tutor, but a "remediator" who tries to fix the learning disability. She meets with Lillie's teachers at ACDS so they can address her individual problems and their plans to address them. Since 2014, she sees Lillie two hours every Saturday and although the dyslexia has not been reversed, with the help of her teachers, the IEP, Ms. Cooper and Misty, Lillie is performing at grade level in math, is able to read and write independently and is successful and happy. Misty, or her father, bring Lillie to Ms. Cooper and pick her up.

Ms. Cooper testified that for this plan to succeed, it has required a lot of work at home by Ms. Noland and that she has done a good job. Ms. Cooper testified that Lillie was brought to her and picked up by either [Misty] or her father, that Lillie attended consistently and promptly, was always well fed and groomed and that Misty paid for the tutoring. She ended her testimony with, "I'm surprised to be here because Lillie is doing well and is happy."

The Court was *extremely impressed* with the education, training and experience of Helen Cespiva, a teacher for 42 years, and Laura Cooper, a teacher for 40 years and finds they were credible witnesses.

The trial court clearly did not want to hinder the progress Lillie has made, academically and socially. The trial court found "beyond a reasonable doubt that changing custody of Lillie would be devastating to her." The trial court further found that, according to Ms. Cespiva's testimony, a change of schools would be 'disastrous' for Lillie, and it would cause Lillie to "lose all she has gained and would have to start over." Ms. Cooper agreed stating Lillie "would lose ground emotionally and academically."

The trial court ruled:

The Court believes at this time Lillie, who is only eight years old, is at a very pivotal stage of her life and her educational

development. If she remains here with her education team, she will continue her progress and the learning disability has great odds of being abated. If she leaves Rapides Parish, she will lose all that she has gained, she will regress and be unable to continue her success.

There were questions about whether the special attention she receives here can be replicated in Oklahoma. The Court is not aware of what services should receive because there was no evidence presented on this issue. After listening to Helen Cespiva and Laura Cooper, the Court would find it difficult to believe that Lillie could receive the same services provided in Rapides Parish. They are extraordinary people who have done extraordinary things for Lillie.

However, even if Lillie could get the same exact services, it would still not be in her best interest to move to Oklahoma. She is attending an excellent private school with small classrooms that are important to her. She has worked with Ms. Cespiva and Ms. Cooper for two years; they know her strengths and weaknesses; she is comfortable with them as they are with her and she has "thrived" in this environment. To take her from this environment and put her in another environment without the comfort zone she has with these two teachers would be a tragic mistake. Also, it is apparent that if the custody does change, her father will not be as attentive as her mother to her educational needs. He was only required one time to tutor her during the summer. If he could not find time to do that, he certainly would not attend to her needs during an entire school year.

The trial court found that it would be in the best interest of the children to remain with their mother. This went against the recommendation of the court-appointed psychologist, Dr. Alicia Pellegrin, who found that Ryan, although he has many flaws, and his wife Lindsey were able to provide the children with the stability they need. The trial court concluded that Dr. Pellegrin was not aware, at the time of her evaluation, of Lillie's learning disabilities and her progress. The trial court questioned "whether her opinion would be the same if she had the information about Lillie that was presented at trial." The trial court is not bound by expert testimony and remains free to accept or reject an expert's conclusions. *Slayton v. Slayton*, 05–1529 (La.App. 3 Cir. 5/3/06), 929 So.2d 865.

After a review of the record, we cannot say the trial court abused its discretion in finding Ryan did prove a change of circumstance which materially affected the welfare of the children had occurred since the previous custody order. While this was not an easy case, we believe the trial court correctly decided in favor of stability for the children.

Additionally, we do not find error with the custody order itself. It is Ryan's contention that the trial court erred in establishing itself as a "safety monitor" for the children rather than placing the children with Ryan. We disagree. The trial court issued a comprehensive custody plan. To ensure that the best of interest of the children was accomplished, the trial court included certain requirements for Misty. This is favorable to Ryan in that, if Misty does not comply, he can file a motion for contempt.

As such, these assignments have no merit.

III. *Assignment of Error Number Three*

Ryan next complains that the trial court gave undue weight to Lillie's post-filing education improvement. We disagree.

The primary consideration in a determination of child custody is the best interest of the child, and the trial court's decision is afforded great weight. *State in the Interest of P.T.*, 14-1160 (La.App. 3 Cir. 3/4/15), 159 So.3d 1184, *writ denied*, 15-693 (La. 5/1/15), 169 So.3d 378. "The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse." *Mason v. Mason*, 16-287, p. 3 (La.App. 3 Cir. 10/5/16), 203 So.3d 519, 523 (quoting *Steinebach v. Steinebach*, 07-38 (La.App. 3 Cir. 5/2/07), 957 so.2d 291, 294).

It is clear from the trial court's lengthy opinion that it weighed all of the evidence presented and determined that Misty as the primary domiciliary parent was in the best interest of the children. The trial court was "extremely impressed" with the testimony and experience of Helen Cespiva and Laura Cooper, which was a primary factor in its determination. The trial court's function and duty is to observe the evidence and make a decision. That is what the trial court in this case did. This assignment is without merit.

IV.    *Assignment of Error Number Five*

Next, Ryan argues that the trial court should have modified his visitation schedule because he now lives in Oklahoma. This issue is not properly before the court. Ryan filed a motion to modify custody, visitation and support wherein he would be named the primary domiciliary parent and Misty would have visitation. Ryan did alternatively request to have increased visitation in the event Misty remained the primary domiciliary parent. It was not considered in the trial court's written reasons or in the judgment. As such, we decline to consider this assignment.

V.    *Assignments of Error Numbers Six and Seven – Admissibility of Evidence*

Ryan next finds fault with the trial court's ruling on certain evidence. The trial court sustained Misty's objection, excluding a Facebook posting between Misty and a friend. In addition, the trial court sustained Misty's objection to a line of questions which she argued expanded the pleadings.

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible." La.Code Evid. art. 402. Ryan contends that the rules of evidence are to be liberally

applied, and any evidence pertaining to a party's parental fitness should have been admitted into evidence.

Regarding the Facebook posting, the photograph was admitted with the text redacted. However, the record shows that Misty was questioned about it and read the text into the record. Therefore, we find this exclusion to be harmless error. Likewise, the second objection led to a proffer regarding testimony of Ryan's mother, Linda. In short, the testimony given was that Misty did not inform Linda of changed plans dealing with a scheduled haircut. This testimony is insignificant at best. We find this, too, to be harmless error.

*VI.     Assignment of Error Number Eight*

In this final assignment of error, Ryan argues that Misty should have been cast with all of the costs of the proceedings because she was granted three continuances over Ryan's objection. As a result, Ryan incurred extra costs. The trial court ordered that each party be responsible for its own costs.

> The trial court may assess costs as it considers equitable. La.Code Civ.P. art. 1920. A trial court has broad discretion in its assessment of costs which can only be reversed on appeal by showing an abuse of discretion. . . .Furthermore, when a prevailing party is assessed with costs of litigation, it is generally due to the fact that the party in some way pointlessly incurred additional costs or engaged in conduct which justified assessment of costs against it.

*Hebert v. Richard*, 16-427, p. 4 (La.App. 3 Cir. 11/2/16), 206 So.3d 251, 254-55 (Citations omitted).

Misty was the prevailing party in this case. The trial court clearly took into account the added expenses caused by Misty and cast her with half of the costs of the litigation. We do not find that the trial court abused its discretion. This assignment is without merit.

15

**DECREE**

The judgment of the trial court is affirmed, and we decline to consider Misty Noland's Answer to Appeal.  All costs of this appeal are assessed to Ryan Michael Noland.

**AFFIRMED.**