Judgment rendered June 1, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,578-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

EDUARDO GRANADOS                          Plaintiff-Appellant

versus

JAMIE LOPEZ GRANADOS                      Defendant-Appellee

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 160824

Honorable John M. Robinson, Judge (*Pro Tempore*)

* * * * *

WEEMS, SCHIMPF, HAINES,                   Counsel for Appellant
SHEMWELL & MOORE
By:  Kenneth P. Haines

RICHARD E. GRIFFITH

HARRELSON LAW FIRM, PA                    Counsel for Appellee
By:  Steven Pate Harrelson

* * * * *

Before MOORE, STONE, and MARCOTTE, JJ.

**STONE, J.**

This child custody case arises from the 26th Judicial District Court, the Honorable John M. Robinson presiding. The parties are Eduardo Granados and Jamie Granados, the father and mother of a minor child. After a trial, the parents were granted joint custody, with Jamie designated as the domiciliary parent. The court ordered that the child is to live with Jamie during the school year, and with Eduardo during the summer. Eduardo appeals. We amend and affirm the trial court judgment.

## FACTS AND PROCEDURAL HISTORY

The parties had the minor child (the "child") while they were married and living near Barksdale Air Force Base pursuant to Eduardo's military assignment there. Eduardo was deployed overseas from August of 2018 to March of 2019. Just weeks after his return, Jamie informed him she wanted a divorce. Eduardo brought the child to Indiana and then returned to Bossier City with the child in mid-2019. Shortly after Eduardo's return with the child, Jamie enlisted in the military and left for basic training in San Antonio, Texas, on June 4, 2019. This initiated the parties' physical separation, and thereafter divorce and child custody litigation ensued. Eduardo filed a petition for divorce and to be named domiciliary parent and to be allowed to relocate the child's primary residence to Indiana. Jamie filed a reconventional demand, which included a request that she be designated the domiciliary parent, and an objection to Eduardo's proposed relocation. Jamie did not, however, explicitly request "relocation" in her pleadings to the trial court.

Litigation was ongoing for the two years following Jamie's move to San Antonio, and during that time, Eduardo had physical custody of the

child and was her primary caregiver. Shortly after Eduardo separated from the military in April 2021, the custody suit, wherein both parties requested domiciliary status, went to trial. As of the time of trial, Eduardo intended to move back to his apparent state of domicile, Indiana.

The trial court awarded domiciliary custody to Jamie as a resident of San Antonio, Texas. The trial court, in its oral reasons for judgment, discussed the impact, if any, of each factor listed in La. C.C. art. 134. He found that La. C.C. art. 134(A)(4) & (6), italicized *infra*, favored Jamie, and that the remainder of the factors in that article favored neither party. Specifically, the basis for the trial court's decision was its finding that Jamie would provide better stability for the child because Jamie was gainfully employed and had a residence, while Eduardo admittedly had neither as of the first day of trial.

On the first day of trial, Eduardo testified that he had prospects of getting a job with the Indiana State Police and the U.S. Postal Service. He also attested that there was a rental home available to him in Jefferson, Indiana, which is approximately 30 miles from Corydon, Indiana (where Eduardo's family lives). On direct examination, he stated that his brother had found the rental home on the internet, and that the landlord said it would be available to Eduardo in two months. On cross-examination, however, Eduardo admitted that his girlfriend was already living in this renthouse—a fact he had not mentioned in explaining how he found it. When the trial resumed approximately two weeks later, Eduardo testified that he had since procured a job (working for his cousin's poultry business) paying over $70,000 per year, and had made arrangements to move into a rent house owned by that same cousin.

Much of the testimony at trial regarded the parties' consumption of alcohol. This included testimony that Jamie was driving home drunk from a Christmas party with the baby in the car, hydroplaned off of the road, and the vehicle got stuck. She did not deny this in her testimony--even after hearing Eduardo testify that she was slurring her speech when he talked to her shortly after the incident, and even after Dr. Lobrano's report was introduced into evidence, wherein an interviewee who was an eyewitness to the aftermath of the incident stated that Jamie was drunk at the time. Jamie's own mother testified to witnessing multiple instances of Jamie getting heavily intoxicated and staying out at bars and clubs into the wee hours of the morning, including when she traveled to Bossier from San Antonio ostensibly to visit the child, and to Jamie going out drinking with other men while married to Eduardo. Eduardo also testified to multiple instances of Jamie getting heavily intoxicated, including at least one occasion wherein he had to wake the baby up in the middle of the night and bring her with him to pick up Jamie from a bar where she was drunk. Jamie admitted to her drinking in her testimony, and her Facebook posts in evidence included pictures of her drinking alcohol and her expression of delight in finding her favorite alcoholic beverage for sale at Target.

Eduardo, on cross-examination, admitted that he too had driven while under some degree of influence from alcohol with the baby in the vehicle, although he claimed he was "not intoxicated" or least not "heavily intoxicated." A nonparty witness also testified to seeing Eduardo drive drunk with the baby in the car. Furthermore, there was evidence that Eduardo got heavily intoxicated on multiple occasions while sharing a residence with the

3

child, including hosting "fraternity-type" parties in the residence while the baby was home.[1]

Additionally, Eduardo damaged his credibility by attempting to mislead the court on the first day of trial in stating that his brother found his (initial) prospective residence in Jefferson, Indiana, on the internet, and that the landlord had assured that the property would be available when Eduardo was ready to take residence there. Only upon cross-examination did Eduardo admit that his current girlfriend was living in that residence.

The evidence gave no indication that either parent has pursued any kind of treatment or rehabilitation for alcohol abuse.

Eduardo filed this appeal, wherein he makes the following assignment of error: "the trial court committed legal error by allowing Jamie to relocate the minor child's residence to San Antonio, Texas without having filed a request to relocate and by failing to consider the statutory relocation factors [set forth in La. R.S. 9:355.14] in so ruling." Eduardo asserts that the judgment is a nullity because it reaches beyond the pleadings in, effectively, granting Jamie relocation without her pleading it or satisfying her burden of proof with respect thereto. Eduardo further argues that the judgment is erroneous because Jamie did not provide him with statutory notice of relocation. Finally, Eduardo contends that the facts proven at trial established that he should have been named domiciliary parent under the law.

---

[1] The trial court likened the parents' parties to "fraternity" parties, which we interpret as a finding that the parties were festivals of alcohol-fueled debauchery.

**DISCUSSION**

The best interest of the child is paramount in all child custody matters. "In a proceeding for divorce or thereafter, the court *shall award custody of a child in accordance with the best interest of the child*." (Emphasis added). La. C.C. art. 131. To that end, La. C.C. art. 134 sets forth a non-exhaustive list of factors which the trial court must consider in determining what custodial arrangement is in the best interest of the child. La. R.S. 9:355.14 provides a similar list of factors to be considered in deciding an application to relocate a child's primary residence.

With those precepts in mind, the court must determine whether it is in the child's best interest for the parents to have joint custody, for one parent to have sole custody, or for a nonparent to have custody.[2] In contested custody matters, there is a presumption in favor of joint custody between the parents. However, a court may award custody to a nonparent as provided in La. C.C. art. 133:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

As previously mentioned, La. C.C. art. 134 provides a non-exclusive list of factors a trial court must consider in determining the best interest of the child in a custody proceeding:

---

[2] "If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless…the best interest of the child requires a different award.…" La. C.C. art. 132. However, "in the absence of agreement [between the parents], or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent." *Id.*

(A)… [T]he court shall consider all relevant factors in determining the *best interest of the child*, including:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) *The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.*

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) *The permanence, as a family unit, of the existing or proposed custodial home or homes.*

(7) *The moral fitness of each party, insofar as it affects the welfare of the child.*

(8) *The history of substance abuse, violence, or criminal activity of any party.*

(9) *The mental and physical health of each party.* Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party. (Emphasis added).

***Statutory relocation factors.*** "The person proposing relocation has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child." La. R.S. 9:355.10. In that pursuit, La. R.S.

6

9:355.14 states the following non-exhaustive list of factors to be considered in determining whether relocation is in the best interest of the child:

A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the *best interest of the child*, including the following:

(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.

(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

*(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.*

(12) Any other factors affecting the best interest of the child.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party. (Emphasis added).

Furthermore, courts in custody proceedings have powers that go beyond merely deciding the custody arrangement itself. For example, La. R.S. 9:331.1, upon a showing of good cause in a contradictory hearing, authorizes a court to order a party in a custody proceeding "to submit to specified drug tests and the collection of hair, urine, tissue, and blood samples as required by appropriate testing procedures within the time period set by the court." Additionally, courts have the authority to require parents to undergo substance abuse and family counseling, and may, for example, prohibit a parent from entering bars or similar establishments; satisfaction of these requirements may be a condition of continued exercise of custody (or visitation). *Noland v. Noland*, 16-641 (La. App. 3 Cir. 4/26/17), 218 So. 3d 215, *writ denied,* 17-1162 (La. 9/15/17), 225 So. 3d 479; *Richardson v. Richardson*, 07-0430 (La. App. 4 Cir. 12/28/07), 974 So. 2d 761, 776. An appellate court may amend the trial court judgment to impose such requirements on the parents. *Main v. Main*, 19-503 (La. App. 5 Cir. 2/19/20), 292 So. 3d 135, *writ denied*, 20-00545 (La. 6/12/20), 307 So. 3d 1036*, recon. not cons.*, 20-0545 (La. 7/2/20), 298 So. 3d 180; *Richardson, supra*. Additionally, in any child custody proceeding, La. R.S. 9:345(A) grants to the court the power to appoint, on its own motion, an attorney to represent the child; however, such an appointment may be made only after a contradictory hearing whereby the court finds such appointment would be in the best interest of the child.

**Standard of review**

"In child custody cases, the decision of the trial court is to be given great weight and overturned only where there is a clear abuse of discretion." *Thompson v. Thompson*, 532 So. 2d 101 (La. 1988). Likewise, in *Gathen v.*

*Gathen,* 10-2312 (La. 5/10/11), 66 So. 3d 1, the Louisiana Supreme Court held that the trial court's denial of a request to relocate a child is subject to abuse of discretion review.

The court in *Gathen, supra,* also held:

> [T]he trial court is not required to expressly analyze each factor in its oral or written reasons for judgment in a relocation case. Not only does La. R.S. 9:355.12 not expressly require it, but a trial court is never required to give oral reasons and is not required to give written reasons for its "findings of fact and reasons for judgment" unless requested by a party in most types of non-jury cases…Further, if the legislature had intended the trial court to expressly analyze each and every factor in either oral or written reasons, it could have provided so. Consequently, we find the trial court's failure to expressly analyze each factor does not constitute an error of law that would allow *de novo* review. *See Evans v. Lungrin,* 97–541 (La.2/6/98), 708 So. 2d 731, 735 (where one or more legal errors interdict the fact-finding process, if the record is complete the court of appeal must conduct a *de novo* review of the record). The appropriate standard of review, as stated in *Curole,* is that the trial court's relocation determination is entitled to great weight and will not be overturned absent a clear showing of abuse of discretion.

An error of law occurs when a court applies incorrect principles of law. A legal error is reversible only if it results in prejudice to a party, *i.e.*, only if it deprives a party of substantial rights and materially affects the outcome of the case. *Chambers v. Village of Moreauville*, 11-898 (La. 1/21/12), 85 So. 3d 593.

**Propriety of using La. C.C. art. 134 instead of La. R.S. 9:355.14**

The trial court did not discuss the relocation-specific list of factors set forth in La. R.S. 9:355.14, but instead, discussed the factors listed in La. C.C. art. 134. Eduardo asserts that this constitutes reversible legal error. Assuming for the purpose of argument that it was legal error for the trial court conduct its analysis pursuant to La. C.C. 134 rather than the relocation-

specific La. R.S. 9:355.14, the decision still cannot be reversed on that ground. Eduardo has completely failed to show that he was prejudiced by this ostensible error. He has not pointed out any specific factor listed in La. C.C. art. 134 that was, but should not have been, considered. Likewise, he has not pointed out any specific factor in La. R.S. 9:355.14 that was not, but should have been, considered.

Moreover, the trial court's oral reasons for judgment indicate that it considered all of the relevant factors in determining the custodial arrangement that would be in the child's best interest, regardless of which list of factors was technically applicable. This is so, in substantial part, because there is a great degree of overlap between La. C.C. art. 134 and La. R.S. 9:355.14. On the facts of this case, it would make no difference whether the court couched its decision in terms of the former or the latter provision. The trial court's judgment cannot be reversed without a showing of prejudice. Accordingly, this assignment of error is without merit.

**Best interest of the child**

The trial court, in its oral reasons for judgment, discussed the impact, if any, of each factor listed in La. C.C. art. 134. He found that Jamie would provide better stability for the child because Jamie had a job and a residence already in place, while Eduardo admittedly had neither as of the first day of trial. The trial court viewed Eduardo's subsequent testimony (that he had obtained a job paying more than $70,000 with his cousin's poultry business and had arranged to move into a rent house owned by that same cousin) doubtfully, and it was well within its discretion to do so.

We hold that the trial court did not abuse its discretion in granting domiciliary parent status to Jamie rather than Eduardo, or in splitting their

10

physical custody between the school year (Jamie) and the summer (Eduardo). The facts of this case are such that the trial court could have decided in either parent's favor without committing abuse of discretion. However, our review does not end there.

The details of the parties' alcohol abuse are deeply troubling. The evidence shows both parents love the child and *generally* prioritize her best interest over their own wants and desires. However, the evidence also demonstrates that, due to their problems with alcohol abuse, both parents have behaved selfishly with reckless disregard for the child's safety and well-being. Therefore, we further hold that the trial court erred in failing to order the parties to take appropriate measures to address their alcohol abuse problems. As provided in the decree, *infra*, we amend the trial court's judgment to impose those requirements on both parents. The trial court also erred in not appointing an attorney to represent the child pursuant to La. R.S. 9:345.

On at least two occasions, the parents chose getting drunk over their child's interest in not riding with a drunk driver. They also held "fraternity type" parties at their home while the baby was there, and multiple witnesses testified to seeing both parents intoxicated on numerous occasions while the child was living in their residence (and otherwise). The trial court's oral reasons for judgment reflect an astonishing lack of regard for the impact of these behaviors on the child. Most importantly, the evidence inescapably preponderates in favor of a finding that Jamie was driving drunk with the baby in the car and hydroplaned off of the road, whereupon the vehicle got

11

stuck.[3] There was ample evidence of other instances of Jamie's alcohol abuse, including corroboration by her own Facebook posts.[4] These facts show that Jamie obviously has an alcohol abuse problem, and has already had significant negative consequences from it (*i.e.,* recklessly putting her baby's life at risk by driving drunk with the baby in the vehicle), and the evidence gave no indication that she has pursued any kind of treatment or rehabilitation for her alcohol abuse problem.

Crucially, Eduardo, on cross-examination, admitted that he too had driven while under some degree of influence of alcohol with the baby in the vehicle, and there was independent testimony that he did in fact drive drunk with the baby in the car. There was also abundant proof that he too got heavily intoxicated on multiple occasions while he was sharing a residence with the child.[5] Eduardo has likewise failed to seek any treatment or counseling for his alcohol abuse problem.

---

[3] Jamie did not deny this in her testimony, even after hearing Eduardo testify that he she was slurring her speech when he talked to her shortly after the incident, and even after Dr. Lobrano's report was introduced into evidence, wherein an interviewee who was an eyewitness to the aftermath of the incident indicated that Jamie was drunk at the time.

[4] Jamie's own mother testified to witnessing multiple instances of Jamie getting heavily intoxicated and staying out at bars and clubs well beyond midnight, including when she traveled to Bossier from San Antonio supposedly to visit the child. Jamie's mother also testified to Jamie going out drinking with other men while married to Eduardo. Likewise, Eduardo testified to multiple instances of Jamie getting heavily intoxicated, including at least one occasion wherein he had to wake the baby up in the middle of the night and bring her with him to pick up Jamie from a bar where she was drunk.

Jamie admitted to drinking alcohol in her testimony, and her Facebook posts in evidence included pictures of her drinking alcohol and her expression of delight in finding her favorite alcoholic beverage for sale at Target.

[5] Additionally, Eduardo attempted to mislead the court on the first day of trial in stating that his brother found his (initial) proposed residence in Jefferson, Indiana, on the internet, and that the landlord had assured that the property would be available when Eduardo was ready to take residence there. Only on cross-examination did Eduardo admit that his current girlfriend was living in that residence. It is severely unlikely that this was a coincidence. Conversely, it *is* likely that he attempted to deceive the court into believing that he would not be taking the child to live with his girlfriend if awarded domiciliary custody in Indiana.

A parent who is heavily intoxicated cannot properly care for a child. Only a parent with an alcohol abuse problem would drive drunk with the baby in the vehicle. This Court orders both parents to never drink and drive again, especially not with a child in the vehicle.

Both parents must already know that driving while intoxicated is a crime (as defined in La. R.S. 14:98). They should also realize that their parental rights can be terminated for "misconduct of the parent toward this [the subject] child…which constitutes grossly negligent behavior below a reasonable standard of human decency." La. Ch.C. art. 1015(4). Driving while heavily intoxicated with a baby in the car easily constitutes "grossly negligent behavior below a reasonable standard of human decency." Finally, we remind the parents that sole custody can be awarded to nonparents upon proof that parental custody would result in substantial harm to the child.

**Jamie's failure to plead for relocation to San Antonio**

Eduardo alleges that the judgment awarding domiciliary parent status to Jamie is a nullity because it, in effect, authorizes Jamie to relocate the child's domicile to San Antonio without Jamie having pled for relocation. This argument is a "red herring." Jamie specifically prayed that the court award her domiciliary status. In his motion for relocation, Eduardo alleged that Jamie is active-duty military and is stationed in San Antonio. Thus, Jamie's relocation of the child to San Antonio is within the scope of the pleadings.

**Notice of relocation**

La. R.S. 9:355.4 states that, "[a] person proposing relocation of a child's principal residence shall notify any person recognized as a parent…as required by R.S. 9:355.5." In turn, La. R.S. 9:355.5 requires

notice to be sent by certified or registered mail, return receipt requested, or delivered by commercial courier to the last known address of the parent entitled to notice; generally, this notice must be given no later than the 60th day before the date of the proposed relocation. La. R.S. 9:355.6 confers discretion on the court regarding the impact of a failure to provide notice:

> The court may consider a failure to provide notice of a proposed relocation of a child as:
> (1) A factor in making its determination regarding the relocation of a child.
> (2) A basis for ordering the return of the child if the relocation has taken place without notice or court authorization.
> (3) Sufficient cause to order the person proposing relocation to pay reasonable expenses incurred by the person objecting to the relocation.

La. R.S. 9:355.6 indicates that failure to give notice of intent to relocate the child does not invalidate a judicially authorized relocation. Failure to give notice is merely "a factor" that the trial court "may" consider in deciding the relocation issue. Jamie's failure to give statutory notice does not render the court's judgment in her favor erroneous in any way.

### DECREE

The judgment of the trial court is **AFFIRMED, subject to the following AMENDMENTS.** During their respective periods of physical custody of the child, the parties are ordered to: (1) abstain completely and continuously from using drugs or alcohol; and (2) submit to random drug/alcohol screens at least monthly. The parties also shall undergo a professional substance abuse evaluation, and shall participate in counseling and treatment from a licensed professional provider, if recommended. The parties shall also comply with all recommendations of the professional

substance abuse treatment provider, except as specifically permitted otherwise by the court for good cause shown.

Additionally, this case is **REMANDED** to the trial court to appoint an attorney to represent the child for the limited purpose of making this judgment executory in the respective counties in which the parents reside.

All costs of this appeal are to be borne by Eduardo Granados. However, the parties shall each be assessed one-half of the cost of the attorney appointed to represent the child.